# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE:<br>BRANDI BRAND | |
| GRAYBAR ELECTRIC COMPANY, INC.,<br><br>Appellant,<br><br>v.<br><br>BRANDI BRAND,<br><br>Appellee. | Civil Action No. TDC-16-2882 |

## MEMORANDUM OPINION

Appellant Graybar Electric Company, Inc. ("Graybar") has appealed orders of the United States Bankruptcy Court for the District of Maryland denying its Motion for Summary Judgment and granting the Motion for Summary Judgment filed by Appellee Brandi Brand. The Appeal is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the orders of the bankruptcy court are REVERSED, and the case is REMANDED for further proceedings.

## BACKGROUND

On August 28, 2012, Electric Power Services, Inc. ("EPS"), an electrical contractor, submitted a commercial credit application to Graybar, a supplier of electrical material and equipment. Brand, in what she identified as her capacity as President of EPS, signed that agreement as a guarantor. The guaranty obligated Brand to:

absolutely, unconditionally and personally guarantee to Graybar ... the performance of all obligations of [EPS] arising under this credit agreement, including without limitations, the payment of all indebtedness as the same are due or come to be due or accelerated whether such indebtedness and obligations exist on the date of this instrument or are incurred after such date.

Joint Appendix ("J.A.") 13 (Credit Application), ECF No. 4-1. As a result of that application, Graybar extended a line of credit to EPS to allow EPS to make purchases from Graybar. For larger purchases, Graybar also required EPS to enter into joint-check agreements through which a general contractor paying for supplies and equipment ordered by EPS from Graybar would make its checks payable to both EPS and Graybar, to facilitate Graybar's receipt of the funds.

On March 4, 2014, Brand filed a petition for Chapter 7 bankruptcy with the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court"). Graybar was not listed as a creditor on any of Brand's schedules, so it received no notice of those proceedings. Brand had no non-exempt property for distribution, so on April 25, 2014, the bankruptcy trustee recommended that her debts be discharged without payment as a "no asset" case. On June 11, 2014, the bankruptcy court issued an order discharging Brand's debts. On June 16, 2014, a final decree was issued, and Brand's bankruptcy case was closed.

On December 30, 2014, Brand placed an email order with Graybar, on behalf of EPS, for supplies relating to EPS projects entitled Cultural Vistas and Global Ties. In the email, Brand's signature line identified her as EPS's Office Manager. Between January 2015 and April 2015, EPS ordered $123,405.58 worth of supplies from Graybar for the Cultural Vistas project. As part of the Cultural Vistas project, EPS submitted the required joint-check agreement, purportedly entered into by EPS and a general contractor, signed on behalf of the general contractor under the name of "Scott A. Masse." The signature, however, was a forgery. To date,

EPS has paid only $10,000 of its outstanding balance to Graybar, in two payments of $5,000 made on August 27, 2015 and September 24, 2015.

On December 9, 2015, Graybar initiated an adversary proceeding with the bankruptcy court seeking a declaratory judgment stating that Brand's bankruptcy did not discharge the debts owed by Brand to Graybar, pursuant to the guaranty, for materials ordered by EPS after March 4, 2014, the date on which Brand filed for bankruptcy. The parties filed cross-motions for summary judgment. Graybar argued that because Brand could have revoked the guaranty at any time, any debt arising from orders placed with Graybar after the filing of Brand's bankruptcy petition on March 4, 2014 was a post-petition debt not discharged by the bankruptcy. Brand framed the case differently, asserting that because her bankruptcy was a "no asset" case, any obligation she had to Graybar was discharged. *See In re Stecklow*, 144 B.R. 314, 318 (Bankr. Md. 1992) (noting that in a "no asset" case, the claim of an unscheduled, unsecured creditor is discharged unless the debt falls into certain enumerated exceptions). Brand did not address whether the money owed to Graybar pursuant to the guaranty was the result of pre-petition or post-petition conduct.

After a hearing on the cross motions, the bankruptcy court granted summary judgment to Brand based on its conclusion that the debt to Graybar arising from the orders placed after the bankruptcy discharge was a pre-petition debt. In so ruling, the bankruptcy court applied that the "conduct test," adopted by the United States Court of Appeals for the Fourth Circuit, under which a debt is considered a pre-petition debt, and thus dischargeable, "so long as the debtor's conduct giving rise to the creditor's right to payment occurs prior to the petition." J.A. 119. Noting that Fourth Circuit case law on the conduct test generally involved tort claims rather than contract claims, the bankruptcy court instead relied on the factually similar case of *In re Lipa*,

433 B.R. 668 (Bankr. E.D. Mich. 2010), in which the court concluded that a debtor's personal guaranty signed pre-petition was a contingent right to payment that was discharged in his bankruptcy. *Id.* at 671. Based on *In re Lipa*, the bankruptcy court determined that the conduct giving rise to Graybar's right to payment was Brand's execution of the guaranty, which could be construed as a contingent right to payment, and that this conduct occurred before Brand filed for bankruptcy. As a result, the bankruptcy court concluded that although the debt to Graybar arose from orders placed after Brand filed for bankruptcy, the debt was nevertheless a pre-petition claim that had been discharged at the conclusion of the bankruptcy proceedings. The bankruptcy court noted, however, that such a result was "uncomfortable," but appeared to be mandated by the Fourth Circuit's broad application of the conduct test. J.A. 121. The Court accordingly denied Graybar's motion for summary judgment and granted summary judgment to Brand. Graybar filed a Notice of Appeal.

## DISCUSSION

Graybar asserts that the bankruptcy court erred in deciding that Brand's new obligations to Graybar under the guaranty were pre-petition debts discharged by her bankruptcy because the conduct giving rise to the debts, the submission of purchase orders to Graybar and the failure to pay for the acquired items, occurred after both the filing of Brand's bankruptcy petition and the discharge of her bankruptcy. Brand counters that any debt she owed to Graybar was discharged through her bankruptcy because, as the bankruptcy court held, the operative conduct was Brand's pre-petition conduct of signing the guaranty. In the alternative, Graybar argues that discharge of the debts incurred through post-petition purchase orders would be unconstitutional as a matter of due process, because Graybar received no notice of Brand's bankruptcy.

4

## I.

The Court has jurisdiction over this appeal because the bankruptcy court's order granting summary judgment to Brand is a final order. 28 U.S.C. § 158(a)(1) (2012); *see also Gold v. Guberman (In re Computer Learning Ctrs., Inc.)*, 407 F.3d 656, 660 (4th Cir. 2005) (stating that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case") (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)). This appeal challenges the bankruptcy court's legal conclusions, which this Court reviews *de novo*. *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992).

## II.

A Chapter 7 bankruptcy discharges the debtor from "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b) (2012). The date of the order for relief is the date that the bankruptcy petition was filed. *See* 11 U.S.C. § 301(b) (stating that "commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter"). "Debt" is defined as a "liability on a claim," with "claim" in turn defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or secured." 11 U.S.C. § 101(5), (12). As this extensive statutory language suggests, "claim" is to be broadly construed, because the bankruptcy code "contemplates the broadest possible relief." *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 202 (4th Cir. 1988). Although the statutory scheme includes contingent obligations as debts, it does not define when a contingent right to payment arises. *See id.* at 201. This case hinges on the question of when Graybar's right to payment for the Cultural Vistas materials ordered by Brand and EPS arose. If that right to payment arose before March 4, 2014, the date that Brand filed her bankruptcy petition, the claim was discharged in Brand's

bankruptcy. If the right to payment did not arise until after that date, the outstanding balance remains one for which Brand is obligated.

"The plain meaning of a 'right to payment' is nothing more or less than an enforceable obligation." *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990). In the Fourth Circuit, the point at which the right to payment arises is established by application of the conduct test. *See Grady*, 839 F.2d at 203. In *Grady*, when the manufacturer of a defective intrauterine contraceptive device was confronted with numerous legal claims, it sought bankruptcy protection. *Id.* at 199. The plaintiff, a woman injured by the device, argued that her tort claim against the manufacturer should not be subject to the automatic stay provision of the Bankruptcy Code because the claim did not arise before the filing of the bankruptcy petition. *Id.* Although the device had been implanted before the filing of the bankruptcy petition, the plaintiff discovered her injuries only after the filing. *Id.* Nevertheless, the court held that "when the acts constituting the tort or breach of warranty have occurred prior to the filing of the [bankruptcy] petition," a contingent right to payment has been established, even if there was still "no right to the immediate payment of money on account of a claim" and the existence of such a right of payment depended "upon a future uncertain event," specifically, the manifestation of injuries from the use of the product. *Id.* at 203. The Court thus held that the plaintiff's right to payment had accrued at the time of the device implantation, such that her tort claim was subject to the automatic stay. *Id.*

Here, as the bankruptcy court noted, cases such as *Grady* are not directly on point because they arise in the context of tort, where the conduct causing the injury usually consists of a discrete act by the defendant. However, in *River Place East Housing Corporation v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994), the Fourth Circuit applied the conduct test to an

6

action sounding in contract. In that case, the debtor, was obligated by a covenant to pay housing cooperative association dues for a residential unit that he had purchased prior to filing for bankruptcy. *Id.* at 835. At the time that he filed his bankruptcy petition, the debtor had various unpaid association dues, all of which were disposed of as part of his bankruptcy proceeding. *Id.* After his discharge from bankruptcy, however, the housing cooperative association filed suit seeking unpaid dues assessed post-petition. *Id.* The debtor asserted that because he had entered into the covenant prior to his bankruptcy, even post-petition assessments made pursuant to the covenant were pre-petition debts discharged in his bankruptcy. *Id.* at 835-36.

The Fourth Circuit sided with the housing association, concluding that the claimed post-petition dues were not pre-petition debts because the debtor's obligation to pay the assessments arose from his continued post-petition ownership of the property, not from the pre-petition contract that he signed, such that the obligation did not arise until the dues were assessed. *Id.* at 837. In making this determination, the Court noted that the debtor's obligations under the covenant could be terminated at any time by transferring title to the property. *Id.* at 838. Thus, the relevant conduct giving rise to the right to payment was not the entering into the covenant, but rather the post-petition assessment of dues and the debtor's breach of the covenant by failing to pay those dues. *See id.* The court distinguished *Grady* on that grounds that there, the conduct giving rise to the claim for payment was a tortious act occurring pre-petition, rather than a breach of a post-petition obligation. *Id.* at 837; *see Grady*, 839 F.2d at 203 (defining the relevant conduct as "acts constituting the tort or breach of warranty").

The Court finds no meaningful distinction between the present case and *River Place*. The only pre-petition conduct by Brand was her signing of the guaranty. Although that act created a contingent right to payment for any preexisting charges incurred by EPS, even if EPS

had not yet defaulted on those debts, it did not bind her to pay all future charges not yet incurred by EPS. As with the pre-petition covenant signed in *River Place*, which the court held did not create a right to payment for association dues that had yet to accrue, Brand's pre-petition act of signing the guaranty did not create a right to payment, even a contingent right to payment, for purchase orders that had not yet been made because Brand could have terminated the guaranty at any time prior to the Cultural Vistas purchase. *See Phelps Dodge Corp. v. Schumacher Elec. Corp.*, 415 F.3d 665, 668 (7th Cir. 2005) ("A continuing guaranty ... is revocable at any time by the guarantor upon notice to the obligee."); *River Place*, 23 F.3d at 838 (noting that transferring the property would have terminated Rosenfeld's obligation to pay future dues). This is not a case in which the pre-petition signing bound the debtor to a future stream of payments that could not be avoided. *See United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F. 3d 573, 580-81 & n.9 (4th Cir. 1996) (holding that retiree pension and health insurance premiums assessed after the filing of a bankruptcy petition were still pre-petition debts because the stream of payments was mandated by the Coal Industry Retiree Health Benefit Act, and the coal company remained liable even if it left the coal industry).

Here, as in *River Place*, all of the acts establishing liability occurred post-petition. Brand and EPS ordered the supplies, Graybar charged EPS for the products, and EPS breached its payment obligations after not only the date that Brand filed her petition, but also the date that her debts were discharged and her bankruptcy case closed. These acts that constituted the breach of the contract are the relevant conduct for purposes of determining when a right to payment arises. *See River Place*, 23 F.3d at 837 (distinguishing *Grady* by emphasizing that *River Place* "involves a breach of a covenant ... that occurred post-petition"); *cf. Grady*, 839 F.2d at 203 (noting that

when acts "constituting ... breach of warranty" have occurred pre-petition, then the right to payment is also pre-petition). The Court therefore concludes that, under the conduct test, Brand's obligation to pay the post-petition debts incurred by EPS was not discharged through Brand's bankruptcy. *See River Place*, 23 F.3d at 837.

Because the analysis and conclusion of *In re Lipa* are contrary to the Fourth Circuit's approach in *River Place*, that case provides no basis to alter this conclusion. *See In re Lipa*, 433 B.R. at 671. Notably, at least one bankruptcy court has applied the Court's reasoning under similar facts to reject the conclusion "that the discharge of a debtor's guaranty obligations extends so far as to include even yet to be incurred debts of the principal obligor." *Weeks v. Isabella Bank Corp. (In re Weeks)*, 400 B.R 117, 124 (Bankr. W.D. Mich. 2013). In *Weeks*, the court concluded that no dischargeable claim "can arise on account of a debtor's guaranty of future indebtedness until a new advance has in fact been made," but found that where a debtor doctor had not revoked a pre-petition guaranty to pay future debts of his medical practice owed to a bank, his debts incurred post-petition were not discharged. *Id.*

Accordingly, the Court finds that pursuant to *River Place*, the unpaid amounts arising from EPS's post-petition purchase orders, even if owed by Brand pursuant to her unrevoked pre-petition guaranty, were not pre-petition debts discharged through Brand's bankruptcy. The Court therefore need not address Brand's constitutional argument.

## CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are REVERSED. The case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. A separate Order shall issue.

Date: September 19, 2017

THEODORE D. CHUANG
United States District Judge